IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>v.<br><br>TIMOTHY R. CESSOR,<br><br>       Defendant. | **8:19CR69**<br><br>**MEMORANDUM<br>AND ORDER** |

This matter is before the Court on defendant Timothy R. Cessor's ("Cessor") oral motion for a judgment of acquittal. *See* Fed. R. Crim. P. 29. The Court reserved judgment, and the case went to the jury. For the reasons stated below, the motion is denied.

On July 29, 2020, the jury found Cessor guilty (Filing No. 54) of making a threat against the President of the United States, in violation of 18 U.S.C. § 871(a).[1] Under Rule 29(a), the Court "must grant a defendant's motion for judgment of acquittal where the evidence is insufficient to sustain a conviction." *United States v. Hardin*, 889 F.3d 945, 949 (8th Cir. 2018). The Court will enter a judgment of acquittal "only when no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* (quoting *United States v. Nshanian*, 821 F.3d 1013, 1017 (8th Cir. 2016)). "This standard is 'very strict.'" *United States v. Boesen*, 491 F.3d 852, 856 (8th Cir. 2007) (quoting *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005)).

To convict under § 871(a), the government must prove, among other things, that the defendant made a true threat. *See United States v. Christenson*, 653 F.3d 697, 701 (8th Cir. 2011). Cessor argues the government did not meet its burden to show he made a

---

[1]Specifically, the Indictment (Filing No. 5) alleges that Cessor "stated he left home armed with a gun and was going to take care of Trump."

"true threat" of *present or future harm* towards the President.  Cessor points out that the alleged threat in this case is a statement to his father that he "was going to take out Trump"—in the past tense.  While this is a close question, the Court finds there was sufficient evidence to submit this case to the jury.

When determining whether a communication constitutes a "true threat," the jury "must view the relevant facts to determine whether the recipient of the alleged threat could reasonably conclude that it expresses a determination or intent to injure presently or in the future."[2]  *United States v. Ivers*, ___ F.3d ___, ___, No. 19-1563, 2020 WL 4212161, at *5 (8th Cir. 2020) (quoting *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 622 (8th Cir. 2002)).  To "decide whether there is sufficient evidence from which the jury can find that a reasonable recipient would interpret a communication as a threat, 'the communication must be viewed in textual context and also in the context of the totality of the circumstances in which the communication was made.'"  *United States v. Mabie*, 663 F.3d 322, 331 (8th Cir. 2011).  Relevant factors include

> 1) [T]he reaction of those who heard the alleged threat; 2) whether the threat was conditional; 3) whether the person who made the alleged threat communicated it directly to the object of the threat; 4) whether the speaker had a history of making threats against the person purportedly threatened; and 5) whether the recipient had a reason to believe that the speaker had a propensity to engage in violence.

*Ivers*, ___ F.3d at ___, 2020 WL 4212161, at *6 (alterations in original) (quoting *Pulaski Cnty. Special Sch. Dist.*, 306 F.3d at 623).

The Court has a duty to "be the evidentiary gatekeeper" for the "case where there is a motion for judgment of acquittal."  *United States v. Floyd*, 458 F.3d 844, 849 (8th Cir. 2006).  The Court does not decide the ultimate issue of whether the communication at issue *is* a true threat as a matter of law, "but whether there is sufficient evidence for a jury to decide" that issue.  *Id.*   If there is, the issue is for the jury to decide.  *See id.*

---

[2]The Court instructed the jury of this standard.

2

The government generally produced evidence at the trial to show, among other things, that Cessor (1) took a gun from his parents' residence, (2) painted "Trump" with a line through it on his parents' pickup, (3) entered Washington, D.C., into his phone's global-positioning system, (4) began to drive from Cheyenne, Wyoming, towards Washington, D.C., and (5) stopped in Nebraska to call his father, Jeff Cessor, to apologize because he "was going to take out Trump." Cessor abandoned his mission and drove back to Wyoming where his parents took him to a hospital for mental-health treatment.

In considering the factors discussed above and the evidence presented at trial—including testimony from Jeff Cessor, law enforcement, and medical professionals as well as exhibits of medical records and videos—the Court concludes there was sufficient evidence for a jury to conclude that Cessor's statement was a true threat.

For example, Exhibit 15—a medical record from Cessor's treatment in Wyoming—stated that Cessor told medical professionals that "he was on his way driving to Washington with a weapon he took from his father to kill the President, but decided to call his father to *inform him of his plans* and to apologize beforehand." (Emphasis added). And Exhibit 17—another medical record—purports to quote Cessor saying, "I was on my way to kill the President but called my dad and *he talked me into returning to get help*." (Emphasis added). And many of the medical records indicated that, while receiving medical treatment in Wyoming, Cessor still had active thoughts of killing the President.[3]

---

[3]The Court agrees with Cessor that these thoughts themselves certainly were not crimes. But they are yet another relevant factor to consider when determining whether sufficient evidence existed to submit the question of a true threat to the jury. The Court gave the jury a limiting instruction properly advising the jury that it could only consider the medical records and testimony relating to them "for the limited purpose of deciding whether the defendant had the state of mind or intent necessary to commit the crime charged in the Indictment."

Between these medical records and witnesses' testimony at trial, a jury could conclude that when Cessor called his father, he was "express[ing] a determination or intent to injure [the President] presently or in the future" such that his father had to convince him otherwise. *Ivers*, ___ F.3d at ___, 2020 WL 4212161, at *5.

The Court acknowledges that words alleged to be the threat in this case used the past tense. But the jury could nonetheless "reasonably infer a true threat of present or future harm from" Cessor's statement that he "was going to take out Trump" when considering the totality of the circumstances.[4] *Ivers*, ___ F.3d at ___, 2020 WL 4212161, at *7 (finding the use of past tense "is not, by itself, dispositive").

Accordingly, Cessor's oral motion for a judgment of acquittal is denied.

IT IS SO ORDERED.

Dated this 3rd day of August 2020.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge

---

[4]Cessor also stresses that he returned home only two hours into his trip to Washington, D.C. and that Cessor indicated he was more angry than interested in success. While those are factors to consider, as the Court instructed the jury, for a true threat "there is no requirement that the speaker intended to carry out the threat, nor is there any requirement that the speaker was capable of carrying out the purported threat of violence." *Pulaski Cnty. Special Sch. Dist.*, 306 F.3d at 624.